UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JESSICA CASSICK,

                              Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                              17-CV-998S
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

        1.      Plaintiff Jessica Cassick challenges the determination of an Administrative

Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act

("the Act").  Plaintiff alleges that she has been disabled since June 24, 2011 due to injuries

sustained in a car accident on January 6, 2011.  Plaintiff contends that her impairments

render her unable to work, and thus, she is entitled to disability benefits under the Act.

        2.      Plaintiff filed an application for disability insurance benefits on March 29,

2014, which the Commissioner denied on May 19, 2014.  Plaintiff thereafter requested a

hearing before an ALJ.   On May 12, 2016, ALJ Michael A. Lehr held a hearing via

videoconference from Kansas City, Missouri, at which Plaintiff appeared with counsel and

testified.  A vocational expert also appeared and testified.  After considering the case *de

novo*, the ALJ denied Plaintiff's application for benefits in a written decision on July 26,

2016.  The Appeals Council denied Plaintiff's request for review on July 31, 2017.  Plaintiff

filed the instant action on October 4, 2017, challenging the Commissioner's final

decision.[1]

---

[1] The ALJ's July 26, 2016, decision became the Commissioner's final decision in this case when the
Appeals Council denied Plaintiff's request for review.

3.      On October 10, 2018, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket No. 13).  On December 10, 2018, the Commissioner filed a Motion for Judgment on the Pleadings.  (Docket No. 15).  Plaintiff filed a reply on December 28, 2018 (Docket No. 16), at which time this Court took the matter under advisement without oral argument.  For the following reasons, Plaintiff's motion is granted, Defendant's motion is denied, and this case will be remanded.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen,

859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the

Commissioner's finding must be sustained "even where substantial evidence may support

the plaintiff's position and despite that the court's independent analysis of the evidence

may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153

(S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination

considerable deference and will not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo*

review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      The Commissioner has established a five-step sequential evaluation

process to determine whether an individual is disabled under the Act. See 20 C.F.R.

§§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity

of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing

whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed.

2d 119 (1987).

7.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity. If he is not,
> the [Commissioner] next considers whether the claimant has
> a "severe impairment" which significantly limits his physical or
> mental ability to do basic work activities. If the claimant
> suffers such an impairment, the third inquiry is whether, based
> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations. If the claimant
> has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age,
> education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform

his past work.  Finally, if the claimant is unable to perform his
past work, the [Commissioner] then determines whether there
is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

      8.     Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided

into two parts.  First, the Commissioner must assess the claimant's job qualifications by

considering his physical ability, age, education, and work experience.  Second, the

Commissioner must determine whether jobs exist in the national economy that a person

having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20

C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76

L. Ed. 2d 66 (1983).

      9.     In this case, the ALJ made the following findings with regard to the five-step

process set forth above: (1) Plaintiff did not engage in substantial gainful activity during

the period from her alleged onset date of June 24, 2011, through her date last insured

("DLI") of June 30, 2013 (R. at 12);[2] (2) Plaintiff's degenerative disc disease of the cervical

and lumbar spine with radiculopathies, and medial and ulnar neuropathies, are severe

impairments within the meaning of the Act (R. at 12); (3) Plaintiff does not have an

impairment or combination of impairments that meet or medically equal any of the

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 13); (4) Plaintiff

retained the residual functional capacity ("RFC") to perform light work, with certain

---

[2] Citations to the underlying administrative record are designated as "R."

limitations[3] (R. at 14); (5) Plaintiff has no past relevant work (R. at 17); (6) Plaintiff could perform jobs that exist in significant number in the national economy (R. at 18). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act during the relevant period. (R. at 19).

10. Plaintiff's brief challenges the ALJ's decision on two grounds. First, she contends that the ALJ erred by improperly substituting his judgment for that of the medical opinions of record. Second, she argues that the ALJ failed to properly evaluate the opinion of her treating physician. (Docket No. 13-1 at 15-24). Having reviewed the ALJ's decision in light of Plaintiff's arguments, the Court finds reversible error on both grounds.

11. First, Plaintiff argues that "the ALJ erred by rejecting all RFC [medical] opinions and then formulating a function-by-function physical RFC without any medical authority," creating "a gap in the record" requiring remand. (Docket No. 13-1 at 17). The Commissioner concedes that there is no medical opinion "directly supporting the ALJ's RFC assessment," (Docket No. 15-1 at 16), but nonetheless defends the ALJ's RFC determination on the ground that "the ALJ found that he could sufficiently weigh the relevant evidence, resolve the inconsistencies, and determine whether Plaintiff was disabled based on the evidence of record"—without identifying what evidence lends support to the RFC finding. (Docket No. 15-1 at 17). As discussed in detail below, the ALJ's RFC determination does not rest on substantial evidence.

---

[3] The ALJ found that Plaintiff could only occasionally balance, stoop, kneel, crouch, crawl or climb ramps and stairs; and she could never climb ladders, ropes, or scaffolding. He also found that she needed to avoid concentrated exposure to extremes or work hazards, that she could only occasionally reach overhead with her right (dominant) upper extremity, and that she was able to use her upper extremities, bilaterally, for frequent, but not constant, gross handling and fine fingering (R. at 14).

12.     The ALJ concluded that Plaintiff "had the [RFC] to perform light work."  (R. at 14).  The Regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

13.     In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  The Supreme Court has defined substantial evidence as requiring "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Perales, 402 U.S. at 401, 91 S. Ct. 1420 (quoting Consol Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).  "However, an ALJ is not a medical professional, and 'is not qualified to assess a [Plaintiff's] RFC on the basis of bare medical findings.'"  Richardson v. Comm'r of Soc. Sec., 339 F. Supp. 3d 107, 115 (W.D.N.Y. 2018) (quoting Ortiz v. Colvin, 298 F. Supp. 2d 581, 586 (W.D.N.Y. 2018)).  "In other words[,] [a]n ALJ is prohibited from playing doctor in the sense that an ALJ may not substitute his own judgment for competent medical opinion."  Id. (internal citation and quotation marks omitted).

14.     The ALJ's decision references the medical opinions of Dr. Mikhail Strut, Plaintiff's treating physician and pain management specialist, Dr. Eric Puestow,[4] who completed a post-hearing interrogatory based on the record evidence, and Dr. Mangold, a consultative psychologist.  (R. at 16).   None of those opinions support the ALJ's determination that Plaintiff retained the RFC to perform light work.

15.     Dr. Strut treated Plaintiff 20 times from November 2012 through November 2015.  (R. at 394-407, 480).  Dr. Strut evaluated Plaintiff on November 13, 2012.  (R. at 287).  He observed that Plaintiff experiences an increase in pain when performing daily activities such as bending, twisting, and lifting.  (R. at 287).  He noted that Plaintiff's "pain is constant [and] variable in intensity."  (R. at 287).  His notes also reflect that he ordered an MRI of Plaintiff's lumbar spine to confirm his diagnosis of lumbar radiculopathy and L5-S1 disc herniation.  (R. at 289).  Dr. Strut's December 6, 2012 evaluation concluded that Plaintiff had "decreased active range of motion in [her] lumbar spine approximately 50% in all planes," had "multiple muscle spasm[s] and [her] bilateral lumbar paraspinals adjacent muscles right [were] much more involved than [the] left," had "decreased medial hamstring reflex on the right side and decreased sensation over right L5 dermatome," and "decreased strength [in her] right dorsiflexion and left plantar flexion."  (R. at 396). Dr. Strut's January 23, 2014 evaluation reflects  that Plaintiff's "symptoms [were] so severe [that] she is no longer able to write or type on the computer," that her "previous physical exam demonstrated weakness in the right shoulders abduction and forward flexion and right elbow extension," and that a "recent physical exam demonstrated significant weakness in her bilateral intrinsic hand muscles."  (R. at 394).  Dr. Strut also

---

[4] The ALJ's decision incorrectly spells Dr. Puestow's name as "Dr. Puestov."

wrote that "[Plaintiff's] pathology is severe and will qualify for surgical intervention." (R. at 395). The record also includes Dr. Strut's treating source statement dated May 9, 2016, where he noted that Plaintiff "suffers from numerous impairments which significantly limit her functional capacity and her ability to fulfill her activity of daily living[]" that "stem from [the motor vehicle accident] which occurred on 1/6/2011." (R. at 480). He concluded: "In my opinion, based upon the MRI and EMG reports and my clinical examinations, [Plaintiff] cannot sustain any full[-]time employment" nor can she "lift anything more than 2 to 3 pounds due to the severe nature of her injuries." (R. at 480-481).

16.    The ALJ did not discuss the above evidence when deciding what weight to afford Dr. Strut's opinion. Instead, the ALJ concluded that Dr. Strut's opinion deserved "limited weight" for two reasons: Dr. Strut "is not known to have a good understanding of the disability program and its requirements"; and "his opinions are not supported by the evidence as a whole, including the [Plaintiff's] previously discussed extent of day-to-day activities." (R. at 16). He also concluded that the record lacked objective evidence supporting Dr. Strut's conclusion that Plaintiff had the capacity "for only sedentary exertion with lifting of no more than 2-3 pounds maximum." (R. at 16).

17.    The flaw in the ALJ's analysis here is two-fold. First, it is well settled that "[t]here is a critical difference between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job," Harris v. Colvin, 149 F. Supp. 3d 435, 444–45 (W.D.N.Y. 2016), and "[t]he fact that [a Plaintiff] can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that [the Plaintiff] possesses an ability to engage in substantial gainful

activity." <u>Mecklenburg v. Astrue</u>, No. 07-CV-760, 2009 WL 4042939, at *8 (W.D.N.Y. Nov. 19, 2009) (internal citation omitted).

18.      But second, the ALJ significantly mischaracterized Plaintiff's testimony in reaching his RFC determination, and misrepresented Plaintiff's ability to perform day-to-day activities.  Plaintiff testified that daily activities such as "grocery shopping, lifting laundry," "vacuuming," "sweeping," and "mopping" caused her pain.  (R. at 39).  When asked how she was able to care for her son and engage in daily activities with her injuries, Plaintiff responded: "Some days it's a lot harder than others.  My son has had to pretty much become a lot more independent than maybe some other [4]-year olds might need to"; "he can accommodate himself, and then I accommodate him as much as I can."  (R. at 41).  She also testified that she is unable to lift her son.  (R. at 41-42).  She described her lower back pain as "feel[ing] like there's a knife in it all the time," preventing her from "lay[ing], sit[ting], stand[ing], [or] doing anything"; she "can't really hold, or do anything with [her] left arm"; she "can't write," "can't pick, pull, or anything" with her left hand— finally admitting that she could not use her left hand "at all."  (R. at 43-44).  Plaintiff testified that her accident and resulting injuries altered the course of her education, prompting her to switch to a major that did not require "actual writing," and one that would lead her to a career in which she could "accommodate [her] own self."  (R. at 50-51).  She also stated that the school provided her "certain accommodations"; for example, some professors would send her their PowerPoint presentations from lectures so that Plaintiff "didn't have to do a lot of note taking."  (R. at 52).  Contrary to the ALJ's conclusion, Plaintiff's testimony appears to be consistent with the functional limitations outlined in Dr. Strut's evaluations.

19.     In further analyzing what weight to afford Dr. Strut's opinion, the ALJ found "no objective evidence" supporting Dr. Strut's conclusion that Plaintiff retained the capacity "for only sedentary exertion with lifting of no more than 2-3 pounds maximum." (R. at 16).   In so concluding, the ALJ ignored Dr. Strut's extensive treatment notes discussed above, which relied on diagnostic testing and Plaintiff's own testimony at her hearing, and instead cherry-picked other record evidence, some of which lie outside of the period of alleged disability.     Cf. Gibson v. Comm'r of Soc. Sec., No. 5:17CV0827(DEP), 2018 WL 2085635, at *6 (N.D.N.Y. May 3, 2018) (where proffered evidence was dated more than a year outside of the period under consideration by the ALJ, it was not material); Boyd v. Colvin, No. 6:15-CV-06667 (MAT), 2016 WL 7155241, at *4 (W.D.N.Y. Dec. 8, 2016) (an ALJ "cannot pick and choose only evidence from the same sources that supports a particular conclusion").

20.     The only other record evidence that the ALJ relied on in reaching his RFC determination were the medical opinions of Dr. Puestow and Dr. Mangold.   The ALJ afforded "little weight" to Dr. Mangold's opinion, the consultative psychologist, (R. at 16-17), who concluded that there was "insufficient evidence to establish the presence of a psychiatric impairment which would preclude the mental ability to perform competitive work during the adjudicative period."   (R. at 73) (emphasis added).   This conclusion, however, is irrelevant to the ALJ's RFC determination.   That leaves only Dr. Puestow's evaluation.

21.     After Plaintiff's merits hearing, the ALJ sent an interrogatory to Dr. Puestow, a board-certified specialist in internal medicine, asking him to evaluate the record evidence and draw a conclusion with respect to Plaintiff's impairments (if any) and any

functional limitations that result from the impairments. (R. at 209). Dr. Puestow completed the interrogatory, concluding that none of Plaintiff's impairments combined or separately met or equaled any impairment described in the Listing of Impairments in the regulations. (R. at 497). The ALJ gave "significant weight" to this portion of Dr. Puestow's interrogatory, (R. at 14), but discounted the portion of the interrogatory where Dr. Puestow stated: "I do not consider the record sufficient for determination" as to whether Plaintiff's impairments resulted in any functional limitations or restrictions. (R. at 498). Dr. Puestow "believe[d] a comprehensive [clinical evaluation] [was] warranted" and stated that he "would be happy to review the case again after the [clinical evaluation]." (R. at 498). The ALJ disagreed with Dr. Puestow, countering that there was, in fact, "extensive evidence available, including the [Plaintiff's] presentation and testimony at the disability hearing" "sufficient to support the functional assessment set forth" in the ALJ's decision. (R. at 16). By picking and choosing portions of Dr. Puestow's interrogatory that supported the ALJ's conclusion but discounting the portions that did not, the ALJ committed error. See Boyd, 2016 WL 7155241, at *4. And, as discussed above, the ALJ mischaracterized Plaintiff's testimony at the hearing in order to conform it to the ALJ's findings. So discounting Dr. Puestow's conclusion on that basis was also error.

22. Because "the ALJ clearly misunderstood or exaggerated the degree to which plaintiff could independently perform daily activities such as housework and personal care," "which significantly altered and influenced her RFC finding," Henderson, 312 F. Supp. 3d at 370, and because there is no other record evidence to support the RFC determination that Plaintiff is able to perform "light work," remand is appropriate.

23.     Plaintiff also argues that the ALJ failed to properly evaluate the medical opinion of Dr. Strut, her treating pain management specialist.  (Docket No. 13-1 at 19-24).  "Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ <u>must</u> follow in determining the appropriate weight to assign a treating physician's opinion."  <u>Estrella v. Berryhill</u>, ---F.3d---, ---, 2019 WL 2273574, at *2 (2d Cir. 2019) (emphasis added).

24.     "First, the ALJ must decide whether the opinion is entitled to controlling weight."  <u>Id.</u>  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."'"  <u>Id.</u> (quoting <u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008) and 20 C.F.R. § 404.1527(d)(2)).

25.     "Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it.  In doing so, it must 'explicitly consider' the following, nonexclusive '<u>Burgess</u> factors': '(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  <u>Id.</u> (quoting <u>Selian v. Astrue</u>, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) and citing <u>Burgess</u>, 537 F.3d at 129; 20 C.F.R. § 404.1527(c)(2)).

26.     "At both steps, the ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion."  <u>Id.</u> (quoting <u>Halloran v. Barnhart</u>, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R.

§ 404.1527(c)(2)).  "An ALJ's failure to 'explicitly' apply the <u>Burgess</u> factors when assigning weight at step two is a procedural error."  <u>Id.</u> at *3 (quoting <u>Selian</u>, 708 F.3d at 419-20).  "If 'the Commissioner has not [otherwise] provided "good reasons" [for its weight assignment],' [the Court is] unable to conclude that the error was harmless and consequently remand for the ALJ to 'comprehensively set forth [its] reasons.'"  <u>Id.</u> (quoting <u>Halloran</u>, 362 F.3d at 33).  "If, however, a 'searching review of the record' assures [the Court] 'that the substance of the treating physician rule was not traversed,' [the Court] will affirm."  <u>Id.</u> (quoting <u>Halloran</u>, 362 F.3d at 33).

27.     At first glance, it appears that the ALJ followed the regulatory requirements of 20 C.F.R. § 404.1527(c)(2) in assigning "limited weight" to Dr. Strut's opinion.  (R. at 16).  The ALJ accounted for the (1) "frequen[cy], length, nature, and extent of treatment," <u>Estrella</u>, 2019 WL 2273574, at *2, when he observed that "Dr. Strut has a longstanding treating relationship with the [Plaintiff]" (R. at 16); (2) "the amount of medical evidence supporting [his] opinion" and (3) "the consistency of the opinion with the remaining medical evidence," <u>Estrella</u>, 2019 WL 2273574, at *2, when he concluded that "[Dr. Strut's] opinions are not supported by the evidence as a whole," particularly when evaluated against Plaintiff's "extensive day-to-day functioning despite her symptoms," (R. at 16); and (4) "whether [Dr. Strut] is a specialist," <u>Estrella</u>, 2019 WL 2273574, at *2, when he acknowledged that Dr. Strutt was "[Plaintiff's] pain management specialist."  (R. at 16).

28.     However, even assuming "substantial evidence supports the ALJ's decision at step one to assign less-than-controlling weight to [Dr. Strut's] opinion, the same is not true of its decision at step two to assign 'little weight' thereto."  <u>Estrella</u>, 2019 WL 2273574, at *2.  Indeed, "[w]hatever weight the ALJ assigns to the treating physician's opinion, he

13

must give 'good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion.'" Richardson, 339 F. Supp. 3d at 114 (quoting 20 C.F.R. § 404.1527(c)(2)). "'Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific . . . .'" Id. (quoting Harris, 149 F. Supp. 3d at 441). "The Second Circuit '[does] not hesitate to remand when the Commissioner's decision has not provided "good reasons" for the weight given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.'" Richardson, 339 F. Supp. 3d at 114 (quoting Halloran, 362 F.3d at 33); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." (quoting Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998))).

29.     Here, the ALJ assigned "limited weight" to Dr. Strut's opinions because, according to the ALJ, Dr. Strut "is not known to have a good understanding of the disability program and its requirements" and because "his opinions are not supported by the evidence as a whole, including [Plaintiff's] previously discussed extent of day-to-day activities." (R. at 16). As explained in detail above, the ALJ mischaracterized Plaintiff's testimony and downplayed the extent to which her injuries and symptoms limited her daily activities. Regardless, the Second Circuit has made clear that "[c]onsideration of such lay testimony is not a substitute for proper consideration of a treating physician's medical opinion." Greek v. Colvin, 802 F.3d 370, 376 (2d Cir. 2015). Finally, the ALJ's conclusion that Dr. Strut lacks a sufficient understanding of the SSA finds no support in the record.

14

Accordingly, the ALJ failed to provide good reasons for discrediting Dr. Strut's opinion. Because the ALJ failed to give good reasons for not crediting the opinion of Dr. Strut, the Court finds cause for remand on this ground as well.  See Snell, 177 F.3d at 133.; see also Greek, 802 F.3d at 376 ("Because the ALJ rested his rejection of [the treating physician's] opinion on flawed reasoning and failed to provide any other reasons for rejecting the opinion, the ALJ erred.").

30.     After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision.   Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's motion seeking the same relief is denied.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      June 24, 2019
            Buffalo, New York


                                        /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                        United States District Judge

15